## IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## EASTERN DISTRICT OF TENNESSEE

In re

                                             Case No. 3:20-bk-32550-SHB

BRIAN DUSTIN GARETT                  Chapter 7

             Debtor

      ANN MOSTOLLER, TRUSTEE

            Plaintiff

          v.                                    Adv. Proc. No. 3:21-ap-3037-SHB

JOHN D. GARRETT and
CHERYL KAYE GARRETT

           Defendants

## M E M O R A N D U M

**APPEARANCES:**    MOSTOLLER, STULBURG & WHITFIELD
                    Hannah Tippett, Esq.
                    Heather Ellis Banks, Esq.
                    136 South Illinois Avenue
                    Suite 104
                    Knoxville, Tennessee  37830
                    Attorneys for Plaintiff

                MAYER & NEWTON
                    John P. Newton, Jr., Esq.
                    1111 Northshore Drive
                    Suite S-570
                    Knoxville, Tennessee  37919
                    Attorneys for Defendants

**SUZANNE H. BAUKNIGHT**
**UNITED STATES BANKRUPTCY JUDGE**

Plaintiff filed the Complaint commencing this adversary proceeding on July 28, 2021 [Doc. 1], asking the Court to avoid a $25,000.00 prepetition transfer from Debtor to Defendants pursuant to 11 U.S.C. §§ 547 or 548, to be recovered for the benefit of Debtor's bankruptcy estate under 11 U.S.C. § 550(a).  Defendants, who are Debtor's parents, filed an Answer on August 20, 2021 [Doc. 5], denying Plaintiff's allegations and entitlement to the relief sought. Trial of this adversary proceeding was held March 11, 2022, and the record before the Court consists of five stipulated facts as reflected in the Joint Pre-Trial Statement filed on February 1, 2022 [Doc. 14], seven stipulated exhibits, and the testimony of Debtor and Defendant Cheryl Garrett.  The Court also takes judicial notice of all documents of record in this adversary proceeding and in Debtor's underlying Chapter 7 bankruptcy case, No. 3:20-bk-32550-SHB.[1] *See* Fed. R. Evid. 201.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E), (F), and (H).

## I.  FINDINGS OF FACT

The undisputed testimony from Debtor established that in November 2018, he suffered a severe illness and was forced to stop working.  To support his family, Debtor received food stamps, Families First benefits, and financial assistance from several family members through his mother, Defendant Cheryl Garrett.  Debtor also applied for but was denied Social Security benefits in 2019.  After retaining counsel and reapplying, Debtor was awarded Social Security disability benefits in May 2020, and he received two lump-sum payments:  $18,850.00 for him on July 15, 2020, and $12,418.00 for his minor daughter on July 22, 2020. [*See* Ex. 3 at pp. 15 of 18, 18 of 18.]  Debtor also received a $15,000.00 settlement payment on August 7, 2020, resulting from an automobile accident that had occurred in May 2019. [*See id*. at p. 10 of 11.]

---

[1] All references to documents in Debtor's bankruptcy case will be denoted as "Garett Doc. ___." (The Court notes that Debtor's last name was misspelled in his bankruptcy petition, and no amended petition was filed to correct the error.)

Four days later,  Debtor withdrew $25,000.00 in cash, and he gave it to his mother ("the

Transfer") so that she could repay the money that had been given to him by family members for

his family's support during the previous two years.  At trial, Defendant Cheryl Garrett testified

that she kept only $4,000.00 of the $25,000.00 and that she gave the remaining $21,000.00 to

family members, including $6,000.00 to her brother, $7,000.00 to her uncle, and approximately

$1,000.00 each to Debtor's sisters.

On November 16, 2020, Debtor filed the Voluntary Petition and all required statements

and schedules commencing his Chapter 7 bankruptcy case.[2]  Before appearing for his meeting of

creditors on December 22, 2020, Debtor filed an Amended Statement of Financial Affairs on

December 21, 2020, in part to add the disclosure of the Transfer, described as a $25,000.00

payment to "Kaye Garrett" on August 11, 2020, for "[r]epayment of living expenses from Social

Security Disability back pay. Parents paid living expense while Debtor was off work due to

illness/disability." [Ex. 2 at ¶ 7; Garett Docs. 14, 16.]  Debtor did not schedule Defendants as

creditors [*see* Doc. 14 at ¶ 5], and during trial, Debtor testified that Defendants have never been

his creditors.

## II.  CONCLUSIONS OF LAW

The parties defined the issues as (1) whether the Transfer made to Defendants in August

2020 constitutes an avoidable transfer pursuant to 11 U.S.C. §§ 547 or 548; (2) has Plaintiff

stated a claim for an avoidable transfer pursuant to 11 U.S.C. §§ 547 or 548; and (3) do any of

the defenses raised by Defendants apply to prohibit the avoidance under 11 U.S.C. § 547(c)?

[*See* Doc. 14 at ¶¶ A-C.]

---

[2] Debtor testified that he filed his case to obtain relief from medical bills he had incurred during his illnesses. [*See also* Garett Doc. 1 at pp. 25-46.]  Debtor received a discharge on February 25, 2021 [Garett Doc. 23].

First, because the record contains no evidence that Defendant John Garrett received any transfer from Debtor, the Court finds that Plaintiff has failed to carry her burden under either § 547 or § 548 so that her claims against Defendant John Garrett must be dismissed.  Thus, the Court will analyze Plaintiff's claims as to Defendant Cheryl Garrett only.[3]

**A.  11 U.S.C. § 547(b)**

Plaintiff's first claim against Defendant seeks to avoid the Transfer as a preference under 11 U.S.C. § 547(b), which provides:

> (b) Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
>
>> (1) to or for the benefit of a creditor;
>>
>> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>>
>> (3) made while the debtor was insolvent;
>>
>> (4) made—
>>
>>> . . .
>>>
>>> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>>
>> (5) that enables such creditor to receive more than such creditor would receive if—
>>
>>> (A) the case were a case under chapter 7 of this title;
>>>
>>> (B) the transfer had not been made; and
>>>
>>> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

---

[3] Thus, "Defendant" shall mean Defendant Cheryl Kaye Garrett.

Specifically, Plaintiff avers that the Transfer was made to an insider on account of an antecedent debt, Debtor was insolvent at the time of the Transfer or became insolvent as a result of the Transfer, and the Transfer allowed Defendant to receive more than she would have under a Chapter 7 bankruptcy case in which the Transfer had not occurred. [Doc. 1.]  Plaintiff bears the burden of proving each element of a preference claim by a preponderance of the evidence. 11 U.S.C. § 547(g); *Luper v. Columbia Gas of Ohio, Inc. (In re Carled, Inc.)*, 91 F.3d 811, 813 (6th Cir. 1996).

Under 11 U.S.C. § 547(f), Debtor is presumed to have been insolvent on and immediately preceding the petition date, and no evidence was presented to rebut that statutory presumption. Also, the parties do not dispute that as Debtor's mother, Defendant is an "insider," *see* 11 U.S.C. § 101(31)(A)(i), and that the Transfer occurred within the year immediately preceding the petition date.  Nonetheless, because Plaintiff presented no evidence that Defendant was a creditor of Debtor at the time of the Transfer or as of the petition date, the Court must find that Plaintiff has not met her burden under § 547(g) to prove that the Transfer was an avoidable preference. Indeed, the uncontroverted evidence at trial established that Debtor was under no legal obligation to repay any money given to him by family members between 2018 and 2020 and that he paid the money only out of a sense of moral duty.

The Bankruptcy Code defines "creditor" as "[an] entity that has a claim against the debtor that arose at the time of or before the [debtor's] order for relief . . .[,]" 11 U.S.C. § 101(10), and as it applies here, the Code defines "claim" as "[a] right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]" 11 U.S.C. § 101(5)(A).  The undisputed testimony at trial by both Debtor and Defendant – which was not refuted by Plaintiff – was that

the Transfer was not repayment of any actual debt or legal obligation owed by Debtor to

Defendant.  Instead, Debtor testified that he felt a moral responsibility to pay back money to

family members who had supported him during his time of need.  Debtor was under no legal

obligation to his family members, none of whom could have – or would have – sought

repayment from him.  Simply, Defendant had no "claim" against Debtor as defined under the

Bankruptcy Code, either at the time of the Transfer or as of the petition date; therefore,

Defendant was not a "creditor" under the Code.  Because Defendant was not a creditor, Plaintiff

has failed to satisfy the requisite element of § 547(b)(1).[4]

### B.  11 U.S.C. § 548(a)

Plaintiff alleged in the alternative that the Transfer should be avoided as a fraudulent

transfer under 11 U.S.C. § 548(a),[5] which states, in material part:

> (a)(1)  The trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily –
>
> . . .
>
>> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>>
>> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation[.]

Plaintiff bears the burden of proving the statutory elements of § 548 by a preponderance of the

evidence; however, she is not required to prove an element of intent for the transfer to be avoided

---

[4] Based on the same evidence, the Court also finds that Plaintiff failed to prove that the Transfer was for an antecedent debt, as required by § 547(b)(2).

[5] Plaintiff did not include Tennessee's constructive fraud statute, Tennessee Code Annotated section 66-3-306(a) or (b), as a basis for recovery.

as "constructively" fraudulent. *Lisle v. John Wylie & Sons, Inc. (In re Wilkinson)*, 196 F. App'x 337, 341 (6th Cir. 2006). Unlike § 547(b), § 548(a)(1)(B) does not require that the Transfer be to or for the benefit of a creditor of Debtor.

### 1. Debtor Did Not Receive Reasonably Equivalent Value for the Transfer.

Under § 548(a)(1)(B)(ii), the Court must examine whether Debtor received reasonably equivalent value for the Transfer to Defendant. The statutory definition of "value" includes "property," 11 U.S.C. § 548(d)(2)(A); however, because the Bankruptcy Code does not define "reasonably equivalent value," the Court "considers whether 'a debtor received any value for the exchange'; and . . . whether the value received was reasonably equivalent to the value surrendered.'" *Dymarkowski v. Berndt (In re Berndt)*, Case No. 17-32856, Adv. Pro. No. 19-03057, 2021 WL 2604955, at *4 (Bankr. N.D. Ohio June 24, 2021) (quoting *Slone v. Dirks (In re Dirks)*, No. 08-8031, 2009 WL 103606, at *7 (B.A.P. 6th Cir. Jan. 16, 2009)). The Court also must be "mindful that reasonably equivalent value 'is not an esoteric concept' and is not limited to money or to value transferred pursuant to a 'value contract.'" *Id.* (quoting *Nathan v. Libra (In re Libra)*, 584 B.R. 550, 560 (Bankr. E.D. Mich. 2018)).

As noted, Defendant is not a creditor, and Debtor did not owe her – or anyone else – repayment of the $25,000.00. Instead, the undisputed evidence was that Debtor paid the $25,000.00 out of a felt moral responsibility to reimburse family members, including Defendant, for financial assistance that they provided to him during his illness and before he began receiving Social Security benefits. A moral belief or duty, however, does not constitute reasonably equivalent value for purposes of a constructively fraudulent transfer under § 548, and "there is not 'reasonably equivalent value' received by a debtor who makes payments to a family member, or who makes payments to a third party for the benefit of a family member." *Gold v. Marquette*

*Univ. (In re Leonard)*, 454 B.R. 444, 458 (Bankr. E.D. Mich. 2011); *see also Tavenner v. Smoot,* 257 F.3d 401, 408–09 (4th Cir. 2001) ("[C]ourts have consistently held that a transfer motivated by love and affection does not constitute reasonably equivalent value for the purposes of 11 U.S.C. § 548."); *DeGiacomo v. Sacred Heart Univ., Inc. (In re Palladino)*, 556 B.R. 10, 15 (Bankr. D. Mass. 2016) ("Ethereal or emotional rewards, such as love and affection, do not qualify as value for purposes of defeating a constructive fraudulent conveyance claim.").

> Simply put, "[m]oral or familial obligations cannot be considered in the value analysis for the obvious reason that the depletion of resources available to creditors cannot be offset by the satisfaction of moral obligations. . . . As cold and unsentimental as that rule might seem, it is easier to understand from the perspective of creditors, most of whom would probably be unwilling to volunteer to provide a financial subsidy to enhance the insolvent debtor's family relationships by allowing the debtor to put valuable property beyond their reach. . . .  Indeed, carving out an exception for transfers that satisfied intangible social obligations would also violate the plain language of the Bankruptcy Code. Whereas the definition of value under section 548 includes 'satisfaction . . . of a . . . debt of the debtor,' 11 U.S.C. § 548(d)(2)(A), the Code defines 'debt' as 'liability on a claim,' and 'claim' refers to a right to payment or to an equitable remedy for breach of performance. 11 U.S.C. §§ 101(5), (12).   These definitions plainly exclude intangible debts, whether they take the form of moral, familial or even spiritual obligations."

*Novak v. Rogers (In re Rogers)*, Case No. 18-20833 (JJT), Adv. Pro. No. 19-02018 (JJT), 2021 WL 112477, at *7 (Bankr. D. Conn. Jan. 5, 2021) (quoting *Boscarino v. Bd. of Trs. of Conn. State Univ. Sys. (In re Knight)*, Case No. 15-42646 (JJT), Adv. Pro. No. 15-02064 (JJT), 2017 WL 4410455, at *3 (Bankr. D. Conn. Sept. 29, 2017)).

Because the undisputed record reflects that Debtor made the Transfer from a sense of moral or family obligation, the Court finds that he did not receive reasonably equivalent value for the transfer, thus satisfying that element of a constructively fraudulent transfer under § 548(a)(1).

**2. Debtor was Insolvent at the Time of the Transfer.**

The Court also finds that Debtor was insolvent when the Transfer occurred. The

Bankruptcy Code defines "insolvent" as "financial condition such that the sum of [the debtor's]

debts is greater than all of [the debtor's] property, at a fair valuation," excluding property that

was fraudulently transferred to defraud creditors or subject to exemption. 11 U.S.C. § 101(32).

The record reflects that on August 11, 2020, the date of the Transfer, Debtor had $26,914.60 in

his bank account before withdrawing the $25,000.00, resulting in a balance of $1,914.60 [Ex. 3

at 10.] When he filed his bankruptcy case on November 16, 2020, a mere ninety-seven days

later, Debtor scheduled assets totaling $5,374.53 and liabilities totaling $97,973.95, which

included medical and credit card debts he incurred between 2015 and 2020. [Garett Doc. 1 at pp.

15, 17-21, 25-51.] Thus, the undisputed record reflects that Debtor was insolvent when he made

the Transfer on August 11, 2020.

**3. The Portion of the Transfer Traceable to Debtor's Social Security Benefits is Not Recoverable, but the Portion of the Transfer Traceable to the Personal Injury Settlement is Recoverable under § 548.**

Having found that Debtor did not receive reasonably equivalent value at the time of the

Transfer when he was insolvent, within two years of his bankruptcy filing, Plaintiff's § 548(a)(1)

claim turns on the issue of whether the Transfer constituted an "interest of the debtor in

property." The Bankruptcy Code does not define the phrase, but it "is properly construed as

referring to any interest of the debtor in property that would constitute property of the debtor's

bankruptcy estate but for the debtor's transfer of such interest." *Aurzada v. Jenkins (In re*

*Jenkins)*, 617 B.R. 91, 104-05 (Bankr. N.D. Tex. 2020); *see also Stevenson v. J.C. Bradford &*

*Co. (In re Cannon)*, 277 F.3d 838, 849 (6th Cir. 2002) ("The Supreme Court has interpreted

these statutes as including in a debtor's estate 'that property that would have been part of the

estate had it not been transferred before the commencement of the bankruptcy proceedings.'" (quoting *Begier v. IRS*, 496 U.S. 53, 58 (1990))).  Thus, the question hinges on whether the funds that Debtor transferred to Defendant would have been part of his bankruptcy estate had he not transferred them prepetition.

Defendant first urges the Court to utilize the "no harm, no foul" or "diminution to the estate" rule because had the $25,000.00 been in Debtor's bank account on the petition date, it either would have been excepted from property of the estate as to the entire portion derived from Social Security benefits or would have been exempted up to $7,500.00[6] as to the portion derived from the personal injury settlement Debtor received on August 7, 2020.  Thus, Defendant argues, Debtor's bankruptcy estate was not diminished by the Transfer.  Defendant also argues that because she kept only $4,000.00 of the $25,000.00, she merely served as a conduit for the remaining $21,000.00, which was paid to various family members, so that the only interest in property that was transferred to her was $4,000.00.

Addressing the second argument first, § 550(a) authorizes Plaintiff to recover either the value of the transfer or the transferred property itself from either the initial transferee or any "immediate mediate or mediate transferee of such initial transferee."  Accordingly, it matters not that Defendant retained only $4,000.00 of the $25,000.00 because § 550(a) authorizes Plaintiff to recover the entire amount directly from Defendant.

The "no harm, no foul" or "diminution of the estate" rule "provides that if a pre-petition transfer of property does not adversely affect creditors because the debtor could have claimed an exemption in the property, the transfer cannot be avoided as a fraudulent or preferential transfer."

---

[6] Tennessee Code Annotated section 26-2-111(2)(B) allows an exemption of up to $7,500.00 "on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor or an individual of whom the debtor is a dependent."

*Wheatley v. Johnson (In re Johnson)*, 579 B.R. 796, 803 (Bankr. W.D. Ky. 2017). Defendant

relies on *Chase Manhattan Mortgage Corp. v. Shapiro (In re Lee)*, 530 F.3d 458 (6th Cir. 2008),

in which the Sixth Circuit examined the application of the earmarking doctrine when

determining whether it negated a preference action by the defendant as to a mortgage refinance.

Defendant's reliance on *In re Lee* is misplaced. The judicially created earmarking doctrine

"applies whenever a third party transfers property to a designated creditor of the debtor for the

agreed-upon purpose of paying that creditor." *Id*. at 468. The Court's finding that Defendant is

not a creditor under the Bankruptcy Code cuts both ways, making the earmarking doctrine

inapplicable.

Even if Defendant could be treated as a creditor for purposes of the earmarking doctrine,

the consensus among most courts that have addressed the issue is that a constructively fraudulent

conveyance cannot be negated by the "no harm, no foul" or "diminution of the estate" rule. *See*

*Satterfield v. Sigmon (In re Mahaffey)*, 91 F.3d 131, at *2 (4th Cir. July 10, 1996) (unpublished

table decision) (agreeing with "a majority of courts" and rejecting the "no harm, no foul"

principle as inappropriate under the Bankruptcy Code because "all property, including

potentially exempt property, is part of the estate until the debtor claims an exemption"); *see also,*

*e.g., Tavenner v. Smoot*, 257 F.3d 401, 406-07 (4th Cir. 2001) (holding that "the so-called 'no

harm, no foul' approach is inconsistent with the Bankruptcy Code . . . [and] conclud[ing] that

transfers of potentially exempt property are amenable to avoidance and recovery actions by

bankruptcy trustees"); *Coleman v. Conwell (In re Coleman)*, Case No. 16-40785-399, Adv. No.

18-04082-399, 2018 WL 6978622, at *2 (Bankr. E.D. Mo. Nov. 14, 2018) ("Debtors are free to

hypothecate, diminish, reduce, or eliminate their exempt property before filing for bankruptcy[,

and] § 522(g) prohibits any claim of an exemption in the Debtor's bankruptcy because the

Debtor voluntarily paid the funds to [a creditor].""); *In re Johnson*, 579 B.R. at 803 (agreeing with

the reasoning of the majority of courts and expressly rejecting the "no harm, no foul" rule);

*Waldschmidt v. Sanders (In re Sanders)*, 213 B.R. 324, 329-31 (Bankr. M.D. Tenn. 1997)

(quoting *Lasich v. Estate of Wickstrom (In re Wickstrom)*, 113 B.R. 339, 346-52 (Bankr. W.D.

Mich. 1990)) (rejecting the defendant's "diminution of the estate" or "no harm, no foul"

argument); *cf. In re O'Brien*, 443 B.R. 117, 133 (Bankr. W.D. Mich. 2011) ("[T]he right to

exempt property is a personal right of the debtor; prepetition transferees may not assert the

possible exemptibility of property in defense to an avoidance action.").

The reasoning of the Eighth Circuit Bankruptcy Appellate Panel in *Sullivan v. Welsh (In*

*re Lumbar)*, 457 B.R. 748, 754-55 (B.A.P. 8th Cir. 2011) (footnotes omitted), when faced with

the same question, is instructive and persuasive.

> We recognize that some bankruptcy courts have applied to federal fraudulent
> transfers a "no harm, no foul" or "diminution of the estate" rationale, similar to the
> Bankruptcy Court's interpretation of Minnesota law here.  However, we join the
> Fourth and Ninth Circuits, as well as a number of lower courts, in rejecting that
> approach because it is inconsistent with the structure and purpose of the Bankruptcy
> Code.  Under the Code (as opposed to its predecessor, the Bankruptcy Act of 1898),
> all property, including potentially exempt property, is part of the bankruptcy estate
> until the debtor claims an exemption in it, and that exemption is approved.  For that
> reason alone, the Fourth Circuit found the "no harm, no foul" approach to be
> "misguided." And, as the Ninth Circuit has held, that exemption is "personal to the
> debtor," and therefore may not be claimed by the recipient of the fraudulent
> transfer.  Indeed, § 522(g) of the Code provides that, if a trustee recovers property
> under § 550, including property which was fraudulently transferred, the debtor may
> claim an exemption in the recovered property *unless* the transfer by the debtor was
> a voluntary one.  Thus, the Code anticipates that the Trustee may recover fraudulent
> transfers of property which the debtor could have claimed as exempt had the debtor
> still owned such property at the time the bankruptcy case was filed.  If, instead of
> retaining such property and claiming it exempt, the debtor voluntarily opted to
> transfer it prior to filing bankruptcy, the Code prohibits that debtor from then
> claiming an exemption if the trustee in the subsequent bankruptcy succeeds
> in avoiding that transfer as fraudulent.

Thus, the Court rejects Defendant's "no harm, no foul" argument.

This determination, however, does not end the analysis under § 548(a)(1) because the Social Security benefits paid to Debtor would not have been property of the bankruptcy estate had he retained them at the time of the bankruptcy filing. As explained below, the Court finds that to the extent that Transfer is traceable to the Social Security benefits, Plaintiff may not recover it as a fraudulent conveyance. That determination, however, also does not end the question because Debtor received the $15,000.00 personal injury settlement before he made the Transfer, and as explained above, Defendant may not assert Debtor's exemption in defense of Plaintiff's § 548 claim.

### a. **Social Security Benefits**

Under 42 U.S.C. § 407(a), "[t]he right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law." This provision is known as the anti-assignment provision of the Social Security Act. *See Hildebrand v. SSA (In re Buren)*, 725 F.2d 1080, 1083 (6th Cir. 1984). The Supreme Court has interpreted § 407(a) to "unambiguously rule[] out any attempt to attach Social Security benefits." *Bennett v. Arkansas*, 485 U.S. 395, 397 (1988); *cf. Porter v. Aetna Cas. & Sur. Co.*, 370 U.S. 159, 162 (1962) (stating that "legislation of this type should be liberally construed to protect funds granted by the Congress for the maintenance and support of the beneficiaries thereof" (citation omitted)).

At least one bankruptcy court in the Sixth Circuit has addressed the issue of whether a Chapter 7 trustee may recover Social Security funds as a fraudulent conveyance under § 548. *Lim v. Manuel (In re Manuel)*, Case No. 18-50540, Adv. Proc. Case No. 18-04468, 2019 WL

4010388, at *3 (Bankr. E.D. Mich. Aug. 23, 2019).  Recognizing that Social Security benefits

are excluded from bankruptcy estates, the bankruptcy court denied summary judgment to the

trustee because if the debtor's Social Security benefits were transferred to his wife for the

debtor's care and maintenance and not merely as a gift, the court would be from precluded from

"finding that the transfers were constructively fraudulent." *Id.* at *1.  The court looked to the

United States Supreme Court's determination "that benefits retain their exempt status if they are

readily available and have not been converted into a permanent investment 'regardless of the

technicalities of title and other formalities.'" *Id.* at *2 (quoting *Porter*, 370 U.S. at 162, and

citing *In re Hensley*, 393 B.R. 186, 198 (Bankr. E.D. Tenn. 2008)).  The *Manuel* court expressly

distinguished *Walker v. Treadwell (In re Treadwell)*, 699 F.2d 1050, 1050-51 (11th Cir. 1983),

and *Edgefield Holdings, LLC v. Gauthier)*, No. 4:16CV00726, 2017 WL 449633 (E.D. Ark. Feb.

2, 2017)), because there was an issue of fact as to whether the transferred funds were used for the

debtor's basic care and maintenance. *In re Manuel*, 2019 WL 4010388, at *2.

  Also instructive is *Carpenter v. Ries (In re Carpenter)*, 614 F.3d 930 (8th Cir. 2010),

which relied heavily on the Sixth Circuit's decision in *In re Buren*.  The Eighth Circuit Court of

Appeals affirmed the decision of the bankruptcy appellate panel "that § 407 operates as a

complete bar to the forced inclusion of past and future social security proceeds in the bankruptcy

estate." *Id.* at 936.  Citing the Sixth Circuit's holding that "§ 407 'specifically prevents judicial

intrusion into the benefit payment process,' and 'Chapter 13 was never intended to allow

bankruptcy courts to compel the [Social Security] Administration to pay debtor's social security

benefits directly to the trustee," *In re Buren*, 725 F.2d at 1086, 1087, the Eighth Circuit found it

irrelevant that the underlying bankruptcy case was filed under Chapter 7 rather than Chapter 13

and concluded that "§ 407 must be read as an *exclusion* provision, which *automatically and*

*completely excludes* social security proceeds from the bankruptcy estate, and not as an exemption provision which must be claimed by the debtor." *In re Carpenter*, 614 F.3d at 936 (emphases added); *see also In re Franklin*, 506 B.R. 765, 776 (Bankr. C.D. Ill. 2014) ("[A] debtor's right to receive social security benefits and his right to possess and use funds traceable to such benefits may not be lost, restricted or impaired because a bankruptcy petition is filed by or against him."). *But see Edgefield Holdings, LLC v. Gauthier*, No. 4:16CV00726, 2017 WL 449633, at *4 (E.D. Ark. Feb. 2, 2017) (relying on *Carpenter* and holding, in a non-bankruptcy case, that Social Security benefits "are no longer exempt if they are not reasonably traceable, lose the 'quality of moneys,' are not readily available as needed for support and maintenance, or have been converted into permanent investments" (also relying on the Supreme Court's analogizing of Social Security benefits exemptions under the prior version of § 407 to veterans' benefits in *Philpott v. Essex Cnty. Welfare Bd.*, 409 U.S. 413, 416 (1973))); *see also Smith v. Mo. (In re Smith)*, 488 B.R. 101, 101 (B.A.P. 8th Cir. 2013) (citing *In re Carpenter*, 408 B.R. at 249) (stating, in dictum, on a challenge by a debtor to Missouri's garnishment of money from his inmate account that originated from his mother's Social Security benefits, that "Social Security benefits are no longer protected when the recipient chooses to pay or give away those funds").

The Eleventh Circuit Court of Appeals in *Walker v. Treadwell (In re Treadwell)*, 699 F.2d 1050, 1050-51 (11th Cir. 1983), which is similar to the case *sub judice*, examined whether a Chapter 7 trustee could use § 548 to avoid the transfer of $4,000.00 in accumulated Social Security benefit payments made by a debtor to his children, identifying the issue as "whether the Social Security Act forecloses the operation of section 548 as to the accumulated social security benefits that were transferred."  In its analysis, however, the Eleventh Circuit applied the former version of § 407 as an *exemption* that must be claimed by debtors affirmatively rather than an

*exception*. *See id*. at 1052.  The Eleventh Circuit also determined that when the debtor transferred
$4,000.00 from his Social Security benefits to his daughters for no consideration other than
"their love and affection," the funds lost their protection under § 407 because the transfer was
counterproductive to "[t]he reason for exempting social security benefits from creditors' claims .
. . , to insure the needy have the necessary resources for continuing basic care and maintenance."
*Id*. at 1053.

Under the express statutory text of § 407(a) and (b), the question here is not whether an
*exempted* asset loses its characterization and therefore loses its exemption status.  The Court
must apply the following language of § 407:  "none of the moneys *paid* or payable or rights
existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or
other legal process, *or to the operation of any bankruptcy or insolvency law*," and no provision
of law, whenever enacted, "may be construed to limit, supersede, or otherwise modify the
provisions of [§ 407] except to the extent that it does so by express reference to this section." 42
U.S.C. §  407 (emphases added).  This Court interprets § 407 as an absolute *exclusion* of Social
Security benefits from a debtor's bankruptcy case rather than an *exemption* that must be claimed
by a debtor under 11 U.S.C. § 522.  As such, the Court concludes that the portion of the Transfer
traceable to Debtor's Social Security benefits is not recoverable by Plaintiff under § 548(a)(1).
*See Stevenson v. J.C. Bradford & Co. (In re Cannon)*, 277 F.3d 838, 849 (6th Cir. 2002) (quoting
*Begier v. IRS*, 496 U.S. 53, 58 (1990)) (holding that "an interest of the debtor in property" under
§ 548 includes only "property that would have been part of the estate had it not been transferred
before the commencement of the bankruptcy proceedings).

Moreover, even if a debtor's transfer of Social Security benefits could destroy the
protections of § 407(a), here, the source of the Transfer was a lump sum for Social Security

disability benefits retroactive to Debtor's (and his daughter's) right to receipt of benefits, and the very purpose of the lump-sum payments was to provide for the beneficiaries' care and maintenance from the date of the application for benefits.[7]  The undisputed evidence is that the Transfer was intended by Debtor to reimburse (albeit voluntarily) the support provided by his family members while he awaited receipt of disability benefits.  Thus, the Court finds that *Treadwell*[8] and *Edgefield Holdings* are distinguishable because the Transfer was for Debtor's care and maintenance and not merely a gift. *See In re Manuel*, 2019 WL 4010388, at *2; *see also In re Carpenter*, 408 B.R. at 249 (distinguishing *Treadwell* because the daughters holding the Social Security benefits from the debtor "were not holding a segregated fund for the benefit of their father").

### b. **Personal Injury Settlement**

Because the personal injury settlement of $15,000.00 would have been part of the bankruptcy estate had the Transfer not occurred, it – unlike the Social Security benefits – qualifies as "an interest of the debtor in property" under § 548(a)(1).  To determine the amount of the Transfer that Plaintiff may recover as a portion of the personal injury settlement, the Court must engage in a tracing analysis.  "The concept of tracing commingled funds is 'an equitable substitute for the impossibility of specific identification.'" *In re Wood*, 459 B.R. 263, 268 (Bankr. S.D. Ohio 2011) (quoting *United States v. Henshaw*, 388 F.3d 738, 741 (10th Cir.

---

[7] *See* 20 C.F.R. § 416.335 (providing that Social Security disability benefits are payable only from the month after filing the application for benefits, regardless of how long the applicant was actually disabled).

[8] The Court also notes that the *Treadwell* decision has been questioned as having been superseded by the 1983 amendment to the anti-assignment statute in the Social Security Act, which added subsection (b): "No other provision of law, enacted before, on, or after April 20, 1983, may be construed to limit, supersede, or otherwise modify the provisions of this section except to the extent that it does so by express reference to this section." 42 U.S.C. § 407(b)." *Combustion Fed. Credit Union v. Barron (In re Barron)*, 85 B.R. 603, 606 (Bankr. N.D. Ala. 1988) (stating that "the language of the statute expresses an intent that social security benefits are to be encapsulated with a total shield from the bankruptcy laws"); *see also In re Radford*, 265 B.R. 827, 830 (Bankr. W.D. Mo. 2000) (agreeing with the *Barron* court that "by the use of the words 'paid or payable' in Section 407 Congress intended to protect both future social security payments and identifiable accumulated social security payments from the claims of creditors").

2004)).  "The most commonly used methods of tracing are:  the lowest intermediate balance test ("LIBT"); the percentage or pro rata approach; and the first in, first out method ("FIFO")." *In re Bentley*, 622 B.R. 296, 309 (Bankr. W.D. Okla. 2020).  "The Sixth Circuit has endorsed the use of the LIBT in bankruptcy cases in order to determine what property should be exempted from a debtor's bankruptcy estate." *In re Maine*, 461 B.R. 723, 731 (Bankr. S.D. Ohio 2011).  When a bankruptcy court must trace trust funds in a commingled account, and the account balance "is reduced to a smaller sum than the trust fund, the latter must be regarded as dissipated, except as to the balance," so that funds added to the account from other sources are not added back to the trust funds.  *Id.* at 732  (quoting *First Fed. of Michigan v. Barrow,* 878 F.2d 912, 916 (6th Cir.1989)).

> As explained by another bankruptcy court in the Sixth Circuit,
>
> The lowest intermediate balance test works by starting at the moment that exempt and nonexempt funds are first commingled in an account. Any expenditures from that time on are presumed to be spent first from the nonexempt funds. If, after the initial commingling, all of the nonexempt funds held in the account are spent, then any further withdrawals are taken from the exempt funds.

*In re Greer*, Case No. 16-11242, 2016 WL 4260077, at *4 (Bankr. N.D. Ohio Aug. 10, 2016).

Here, the protected Social Security benefits were deposited before the non-protected personal injury settlement funds.  Debtor's bank statement, however, reflects four withdrawals totaling $109.86[9] after deposit of the settlement funds and before withdrawal of the $25,000.00. [Ex. 3 at p. 10 of 11.]  Applying LIBT principles, the Court reduces the $15,000.00 personal injury settlement funds by $109.86 because "[a]ny expenditures from [the] time [of commingling] are presumed to be spent first from the nonexempt funds." *In re Greer*,.2016 WL

---

[9] The withdrawals were: $32.47 on August 8, $6.49 on August 9, $7.14 on August 10, and $63.76 on August 11.

4260077, at *4.  This calculation ($15,000.00 - $109.86) yields $14,890.14, which the Court concludes is the amount of the Transfer that is properly attributed to the non-protected personal injury settlement funds and thus, recoverable by Plaintiff from Defendant under § 548(a)(1).

### III.  CONCLUSION

Because there was no evidence presented that Defendant John D. Garrett received a transfer of any property from Debtor at any time, Plaintiff's claims against him must be dismissed.  Additionally, because Defendant Cheryl Garrett is not a creditor of Debtor, Plaintiff has not met her burden of proof on her claim under 11 U.S.C. § 547(b), and it, too, must be dismissed.

On the other hand, because Debtor transferred property to Defendant without receiving reasonably equivalent value when he was insolvent, Debtor's transfer to Defendant on August 11, 2020, was constructively fraudulent and may be avoided by Plaintiff under 11 U.S.C. § 548 and recovered under § 550(a) for the benefit of the estate.  Such recovery, however, is limited to $14,890.14 because 42 U.S.C. § 407(a) excludes from the bankruptcy estate the portion of the transfer that was attributable to Debtor's Social Security benefits.  Accordingly, only $14,890.14 of the $25,000.00 transferred to Defendant on August 11, 2020, is deemed a constructively fraudulent transfer under § 548(a)(1) subject to avoidance and recovery by Plaintiff under § 550(a)(1).

A Judgment consistent with this Memorandum will be entered.

FILED:  April 6, 2022

BY THE COURT

*s/ Suzanne H. Bauknight*

SUZANNE H. BAUKNIGHT
UNITED STATES BANKRUPTCY JUDGE